**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMY FERGUSON**<br>9871 Beryl Street NW<br>Canal Fulton, Ohio 44614 | : | |
| Plaintiff, | : | CASE NO. 5:26-cv-2112 |
| VS. | : | JUDGE |
| **DIEBOLD NIXDORF, INC.**<br>350 Orchard Ave NE<br>North Canton, Ohio 44720 | : | MAGISTRATE JUDGE<br><br>**Jury Demand Endorsed Hereon** |
| Defendant. | : | |

## COMPLAINT

NOW COMES Plaintiff Amy Ferguson ("Plaintiff") and proffers this Complaint for damages against Defendant Diebold Nixdorf, Inc. ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Stark County, Ohio.

2. Plaintiff brings this action to redress injuries committed against her as a result of Defendant's actions.

3. Defendant Diebold Nixdorf, Inc. is a company doing business in the Northern District of Ohio, with a place of business located at 350 Orchard Ave NE, North Canton, Ohio 44720.

4. At all relevant times, Plaintiff was an employee as that term is defined by 29 U.S.C. § 2611(2), O.R.C. Chapter 4112, the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

5. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A), O.R.C. Chapter 4112, the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

6. Defendant is engaged in commerce, or an industry or activity affecting commerce, and employed the requisite number of employees during the period relevant to this Complaint.

**JURISDICTION AND VENUE**

7. This action is brought pursuant to the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and the Ohio Laws of Discrimination, R.C. Chapter 4112 ("Chapter 4112").

8. All federal counts contained herein are brought pursuant to the laws of the United States, therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

9. Venue is proper pursuant to 28 U.S.C. § 1391, because Plaintiff entered into an employment relationship with Defendant in the Northern District of Ohio, Plaintiff performed her job duties there, and Defendant is doing and has done substantial business in the Northern District of Ohio.

**ADMINISTRATIVE EXHAUSTION**

10. Plaintiff brings her state law age discrimination, disability discrimination, failure to accommodate, and retaliation claims pursuant to Ohio Revised Code Chapter 4112.

11. Plaintiff brings her state law age discrimination, disability discrimination, retaliation, and failure to accommodate claims pursuant to Ohio Revised Code 4112.052(B)(2)(b).

12. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on July 2, 2026, and the charge was dual filed with the Ohio Civil Rights Commission against Diebold Nixdorf, Inc.

13. Plaintiff submitted charges against Diebold Nixdorf, Inc. due to age discrimination, disability discrimination, retaliation, and failure to accommodate.

14. After submitting the charge that was dual filed with both organizations, attached as Exhibit A, and requesting a right to sue letter, the EEOC granted Plaintiff's request and issued a right to sue letter on July 10, 2026, attached as Exhibit B.

15. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit, and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue.

## FACTUAL BACKGROUND

16. Defendant hired Plaintiff on or about May 12, 2025, in the role of Associate Project Coordinator.

17. Plaintiff's job duties included, but were not limited to, coordinating daily installations at PNC Bank branches, tracking field technician progress, escalating site issues, managing project tracking, creating and closing service calls, coordinating with technical teams, handling field complaints, and leading daily customer meetings.

18. Plaintiff's daily responsibilities included, but were not limited to, tracking approximately 5 to 30 sites per day, capturing detailed milestones for each site, managing

deliverables, and providing tracking reports to the customer at 8:30 AM, 12:00 PM, 2:00 PM, 4:00 PM, and end of day.

19. Plaintiff managed one of Defendant's largest and most critical strategic client accounts, PNC Bank, a client of over thirty years, and became one of the primary faces of that annual multi-million-dollar service contract.

20. Throughout her approximately 10.5 months of employment with Defendant, Plaintiff's performance history was devoid of any disciplinary action or performance issues.

21. Plaintiff was an exemplary employee who consistently logged in to work at approximately 6:30 AM and logged out at approximately 5:30 PM or later, demonstrating her dedication to her role.

22. At all relevant times, Plaintiff was an individual who suffers from a disability recognized under the ADA.

23. On or about March 23, 2026, Plaintiff underwent a breast biopsy at Cleveland Clinic.

24. On or about March 24, 2026, Plaintiff received pathology results confirming a diagnosis of invasive ductal carcinoma, provisional Grade 3.

25. The pathology report indicated focal ductal carcinoma in situ with high nuclear grade and central comedonecrosis, as well as a focus suspicious for lymphovascular space invasion.

26. This is an aggressive form of breast cancer that requires immediate and intensive treatment.

27. Plaintiff's treating physician, Dr. Trevor Schroeder, DO, confirmed the seriousness of Plaintiff's condition and the need for immediate medical intervention.

28. Plaintiff messaged her direct supervisor, Cheri Rust, Manager of Implementation and Transformation, the morning of March 20, 2026.

29. Plaintiff stated "Good morning- can I speak with you before our meeting today? I received a diagnosis at my appointment yesterday."

30. Ms. Rust responded immediately, provided her personal cell phone number, and told Plaintiff to call her.

31. At approximately 7:05 AM on March 20, 2026, Plaintiff called Ms. Rust to disclose that she had received a cancer diagnosis.

32. During this first conversation, Ms. Rust was initially supportive, stating approximately "your health comes first... lots of hugs and prayers."

33. By Monday, March 23, 2026, Ms. Rust had shared Plaintiff's cancer diagnosis with Plaintiff's entire team.

34. Plaintiff messaged her coworker Tiffany Bryant, asking if Ms. Rust had informed the team about her medical situation.

35. Ms. Bryant responded, "She did and you will get thru this, girl!!"

36. Defendant had actual knowledge of Plaintiff's serious medical condition as of March 20, 2026, at the earliest.

37. Defendant had actual knowledge of Plaintiff's serious medical condition as of March 23, 2026, at the latest.

38. On March 25, 2026, Plaintiff provided additional details about her diagnosis to Ms. Rust via chat message.

39. On March 25, 2026, Plaintiff explained that she was facing surgery, possible chemotherapy, and radiation.

40. On March 25, 2026, Plaintiff explained that she had an appointment with a surgeon scheduled for Tuesday of the following week.

41. Ms. Rust again responded supportively in these chat messages.

42. On the same day, March 25, 2026, at 8:37 AM, just hours before Plaintiff disclosed additional specific details of her invasive cancer diagnosis, Ms. Rust sent Plaintiff an email.

43. Ms. Rust's email was sent at the direction of Director Derek Stanley.

44. The email requested that Plaintiff provide a detailed list of the tasks she completed for each customer.

45. The request was for these tasks to be broken out daily, monthly, and yearly, preferably by end of day, in order to determine whether Defendant needed to make assignment changes or move tasks to others.

46. This request, coming just five days after Plaintiff's initial cancer disclosure and just two days before her termination, suggests that Defendant decided to replace Plaintiff and distribute her job duties to others.

47. Plaintiff complied with this request and submitted a detailed, comprehensive task list by 4:05 PM on March 25, 2026.

48. On the morning of March 26, 2026, at approximately 8:23 AM, Plaintiff filed a short-term disability claim and request for FMLA leave with Lincoln Financial.

49. Lincoln Financial was Defendant's disability insurance administrator.

50. Plaintiff's claim was assigned claim number 18755474.

51. Plaintiff indicated that her anticipated leave start date would be April 9, 2026, to allow time for her scheduled surgical consultation and subsequent surgery.

52. Per Defendant's own policy, Plaintiff contacted the benefits coordinator to ensure all protocol was followed when submitting this claim.

53. Plaintiff's treating physician, Dr. Trevor Schroeder, DO, had agreed to complete the necessary medical certification paperwork in support of Plaintiff's need for medical leave.

54. Approximately 24 hours later, on March 27, 2026, at approximately 11:00 AM, Defendant terminated Plaintiff's employment.

55. The termination was characterized as part of a "reduction in force" affecting the ATM Project Support Coordinators unit.

56. Defendant stated that the reason for the layoff was a transition to an offshore support model.

57. Approximately 42 employees were laid off.

58. Approximately 5 to 15 employees in the same unit were retained.

59. Plaintiff's coworkers expressed shock at the sudden layoff.

60. Also on March 27, 2026, the same day as Plaintiff's termination, Lincoln Financial issued a denial letter for Plaintiff's leave request.

61. Lincoln Financial stated that the request was denied because she had not met the required number of service months.

62. Defendant's FMLA policy required twelve months of employment.

63. Plaintiff had been employed for approximately 10.5 months at the time of her diagnosis and termination.

64. The timing of Plaintiff's termination is devastating.

65. Within five days of disclosing her breast cancer diagnosis to her supervisor, Plaintiff's director requested a detailed breakdown of all of Plaintiff's job responsibilities by end of day.

66. Within six days, Plaintiff filed for short-term disabiltiy leave and requesed FMLA leave.

67. Within seven days, Plaintiff was terminated.

68. The temporal proximity between Plaintiff's disclosure of her serious medical condition, her filing for disability and leave benefits, and her termination creates an inference of discrimination and retaliation.

69. The stated reason for Plaintiff's termination, a transition to an offshore support model, is undermined by comparator evidence.

70. According to Defendant's own separation documentation, one other Associate Project Support Coordinator was retained during the reduction in force.

71. That retained employee was 30 years old.

72. Plaintiff held the identical job title of Associate Project Support Coordinator

73. Plaintiff was 45 years old and was terminated.

74. Plaintiff had an exemplary performance record with no disciplinary issues.

75. Plaintiff had exclusive experience managing one of Defendant's largest and most critical strategic client accounts.

76. Despite her strong performance, Plaintiff was selected for termination.

77. Despite her experience with a major client, Plaintiff was selected for termination.

78. Despite her detailed knowledge of critical systems and processes, Plaintiff was selected for termination.

79. Instead, a younger employee in the same position was retained.

80. When Plaintiff was terminated, she lost the compensation on which she and her family depend.

81. When Plaintiff was terminated, she lost her medical insurance immediately.

82. This loss of insurance occurred at the moment Plaintiff needed it most: when she was facing aggressive breast cancer requiring intensive treatment.

83. Plaintiff also lost access to short-term disability benefits and company-provided life insurance at a time when her cancer diagnosis makes it difficult to obtain replacement coverage.

84. The emotional distress that Plaintiff has suffered as a result is significant and severe.

85. Defendant's conduct violated the FMLA, the ADA, the ADEA, and Ohio law.

86. Defendant retaliated against Plaintiff for exercising her rights under the FMLA by terminating her employment immediately after she notified Defendant of her serious medical condition and need for surgery.

87. Defendant failed to accommodate Plaintiff's disability and failed to engage in any interactive process to determine what accommodations might be appropriate.

88. Defendant's proffered reason for termination is pretextual.

**COUNT I**
**Retaliation - Violation of the Family Medical Leave Act**

89. Plaintiff reasserts and reincorporates each and every allegation contained in the paragraphs above as if fully rewritten herein.

90. Plaintiff engaged in protected activity when she attempted to exercise rights under the FMLA by notifying Defendant of her serious medical condition and filing a request for FMLA leave.

91. Defendant knew that Plaintiff engaged in protected activity because Plaintiff communicated her serious medical condition and her request for leave directly to Defendant.

92. Plaintiff suffered an adverse employment action when Defendant terminated her employment on or about March 27, 2026.

93. Defendant's termination of Plaintiff was directly related to her request for FMLA leave, because Defendant terminated Plaintiff one day after she filed for leave.

94. Defendant lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discharge of Plaintiff.

95. Defendant's violations of the Family and Medical Leave Act entitle Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

**COUNT II**
**Disability Discrimination - Americans with Disabilities Act**

96. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

97. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, *et seq.*, and as defined in 42 U.S.C. § 12101.

98. Plaintiff is an otherwise qualified individual with a disability.

99. Plaintiff was qualified for the position, with or without a reasonable accommodation.

100. Plaintiff suffered an adverse employment decision when Defendant terminated her on or about March 27, 2026.

101. The circumstances give rise to an inference of unlawful discrimination, or a nexus exists between the adverse action suffered and Plaintiff's disability.

102. Defendant discriminated against Plaintiff because of her disability by terminating her employment shortly after learning of her cancer diagnosis, selecting her for termination over a comparator in the same position, and/or by otherwise discriminating against her in the terms, privileges, and conditions of employment.

103. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

104. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

**COUNT III**
**Disability Discrimination - R.C. § 4112**

105. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

106. At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

107. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. § 4112.01(A)(13) of the Ohio Revised Code.

108. Defendant knew Plaintiff was disabled and/or regarded her as disabled.

109. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disability because Plaintiff kept Defendant apprised of her medical condition and her need for medical leave to address it.

110. Defendant discriminated against Plaintiff because of her disability by terminating her employment because of her medical condition, choosing to retain a non-disabled employee in the same position over her, and/or by otherwise discriminating against her in the terms, privileges, and conditions of employment.

111. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

112. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT IV
**Failure to Accommodate - Americans with Disabilities Act**

113. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

114. At all times herein, Plaintiff suffered from an impairment within the meaning of the ADA.

115. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

116. Plaintiff had no outstanding performance concerns.

117. Defendant knew or had reason to know Plaintiff suffered from a disability or regarded her as disabled.

118. Plaintiff requested a reasonable accommodation for her disability when she sought medical leave.

119. Plaintiff's request was reasonable because she required medical leave for reasons directly related to her disability.

120. Such reasonable accommodation was possible for Defendant to provide.

121. Defendant violated the ADA by failing to accommodate Plaintiff's disability and by terminating Plaintiff for issues related to her disability.

122. Defendant violated the ADA by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability.

123. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits, and other terms, conditions, and privileges of employment for which Defendant is liable.

124. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT V
## Failure to Accommodate - R.C. § 4112.02

125. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

126. At all times herein, Plaintiff suffered from an impairment within the meaning of R.C. § 4112.01.

127. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. § 4112.01.

128. Defendant knew or had reason to know Plaintiff suffered from a disability or regarded her as disabled.

129. Plaintiff requested a reasonable accommodation for her disability when she sought medical leave.

130. Plaintiff's request was reasonable because she required medical leave for reasons directly related to her disability.

131. Such reasonable accommodation was possible for Defendant to provide.

132. Defendant violated R.C. § 4112.02 by failing to accommodate Plaintiff's disability and by terminating Plaintiff for issues related to her disability.

133. Defendant violated R.C. § 4112.02 by failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability.

134. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits, and other terms, conditions, and privileges of employment for which Defendant is liable.

135. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VI
**Retaliation - Americans with Disabilities Act**

136. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

137. Plaintiff engaged in a protected activity by requesting medical leave as a reasonable accommodation for her disability.

138. Defendant knew Plaintiff engaged in a protected activity because Plaintiff communicated her requests for medical leave directly to Defendant.

139. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions:

terminating her employment, refusing her reasonable accommodation, and/or by otherwise discriminating against her in the terms, privileges, and conditions of employment.

140. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

141. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## COUNT VII
## Retaliation - R.C. § 4112.02

142. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

143. Plaintiff engaged in a protected activity by disclosing her disability and requesting medical leave as a reasonable accommodation for her disability.

144. Defendant knew Plaintiff engaged in a protected activity because Plaintiff communicated her disability and her requests for medical leave directly to Defendant.

145. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, refusing her reasonable accommodation, and/or by otherwise discriminating against her in the terms, privileges, and conditions of employment.

146. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and

suffering, and the loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

147. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

**COUNT VIII**
**Age Discrimination - Age Discrimination in Employment Act**

148. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

149. This claim is brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, and as amended, for employment discrimination based on age.

150. Plaintiff was born on November 13, 1980, and, at all times relevant hereto, was over forty (40) years of age, and therefore a member of a protected class based on age.

151. At all times relevant herein, Plaintiff was qualified for her position, as she never had any performance concerns or issues performing her job duties, she had an unblemished performance record, and she successfully managed tracking, DNSIPS, final shipping, and deliverables for PNC, one of Defendant's largest, most critical, multi-million-dollar accounts.

152. Plaintiff never received any disciplinary action or performance warnings prior to her termination.

153. Defendant discriminated against Plaintiff because of her age by abruptly terminating Plaintiff on March 27, 2026, while retaining a substantially younger employee in the same position.

154. Defendant discriminated against Plaintiff on the basis of age by treating her less favorably than other younger employees in the terms and conditions of employment, in violation of the ADEA.

155. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and fringe benefits.

156. Defendant willfully discriminated against Plaintiff, in that Defendant knew or showed reckless disregard for the fact that its conduct was prohibited by the ADEA.

157. Defendant discriminated against Plaintiff on the basis of her age when it terminated her, treating Plaintiff less favorably than employees outside the protected group, in violation of the ADEA, entitling Plaintiff to the remedies contained therein, including but not limited to back pay, front pay, lost benefits, liquidated damages, and attorneys' fees and costs.

## COUNT IX
## Age Discrimination - R.C. § 4112.02

158. Plaintiff reasserts and reincorporates all allegations in the paragraphs above as if fully rewritten herein.

159. Plaintiff was born on November 13, 1980, and, at all times relevant hereto, was over 40 years of age, and therefore a member of a protected class based on age.

160. At all times relevant herein, Plaintiff was qualified for her position, as she never had any performance concerns or issues performing her job duties, she had an unblemished performance record, and she successfully managed tracking, DNSIPS, final shipping, and deliverables for PNC, one of Defendant's largest, most critical, multi-million-dollar accounts.

161. Plaintiff never received any disciplinary action or performance warnings prior to her termination.

162. Plaintiff was a high performer with no significant history of any disciplinary or performance actions.

163. Defendant discriminated against Plaintiff on the basis of her age by abruptly terminating Plaintiff on March 27, 2026.

164. Defendant terminated Plaintiff while retaining a substantially younger employee who held the identical position of Associate Project Support Coordinator.

165. Defendant discriminated against Plaintiff on the basis of age by treating her less favorably than other younger employees in the terms and conditions of employment, in violation of Chapter 4112.02 of the Ohio Revised Code.

166. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and fringe benefits.

167. As a direct and proximate result of Defendant's conduct, Plaintiff suffered financial and emotional harm including shame, humiliation, embarrassment, and mental anguish.

168. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all legal damages, including back pay, front pay, lost benefits, emotional distress, compensatory damages, attorneys' fees, costs and other relief available under Ohio Revised Code Chapter 4112, including, but not limited to punitive damages.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Delaney A. Barr-Brown, Esq.*
Delaney A. Barr-Brown (0098092)
Rachel Sabo Friedmann (0089226)
**The Friedmann Firm LLC**
3740 Ridge Mill Drive
Hilliard, OH 43026

Delaney@TFFLegal.com
Rachel@TFFLegal.com
614-639-6477 (Phone)
614-737-9812 (Fax)

*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Delaney A. Barr-Brown, Esq.*
Delaney A. Barr-Brown (0098092)